*Formatted for Electronic Distribution* *For Publication*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF VERMONT**

Filed & Entered
On Docket
March 29, 2013

_____

**In re**
    **John Mead,**      **Chapter 7**
          **Debtor.**      **Case # 12-10415**
_____

*Appearances:*   Erik Valdes, Esq.     Raymond J. Obuchowski, Esq.     Susan J. Steckel, Esq.
                Newport, VT           Bethel, VT                          Marshfield, VT
                For the Debtor         Chapter 7 Trustee             For Axelrod & Adler, PLLC

**MEMORANDUM OF DECISION**
**G**RANTING **D**EBTOR'S **M**OTION TO **A**VOID **L**IEN, **O**VERRULING **C**REDITOR'S **O**BJECTION TO **M**OTION,
AND **O**VERRULING **C**REDITOR'S AND **C**HAPTER 7 **T**RUSTEE'S **O**BJECTION
TO **D**EBTOR'S **C**LAIM OF **H**OMESTEAD **E**XEMPTION

       The Debtor seeks to avoid the lien of Axelrod & Adler, PLLC (the "Creditor") on real property he claims as his homestead. The Creditor and the Chapter 7 trustee (the "Trustee") assert that the Debtor is not entitled to claim a homestead exemption in this property, and the Creditor contends that since this property may not be exempt as a homestead, the Debtor is precluded from avoiding the Creditor's lien on it. For the reasons set forth below, the Court finds that the Creditor and Trustee have failed to meet their burden of proof and, based upon the record before it, the Debtor may claim this property exempt as his homestead. Accordingly, the Court grants the Debtor's motion, overrules the Creditor's objection to that motion, and overrules the objection to the Debtor's claim of homestead exemption.

J<small>URISDICTION</small>

       This Court has jurisdiction over these contested matters pursuant to 28 U.S.C. §§ 157 and 1334, and declares them to be core proceedings under 28 U.S.C. § 157(b)(2)(B) and (K).

P<small>ROCEDURAL</small> H<small>ISTORY</small>

       The Debtor filed this Chapter 7 case on May 10, 2012. On June 13, 2012, the Debtor filed a motion to avoid the Creditor's lien on the ground that the lien impaired his homestead exemption, pursuant to 11 U.S.C § 522(f) (doc. # 10) (the "Motion"). The Motion alleges that the Debtor owns real property located at 4410 Pine Hill Road in Newport, Vermont (the "Property"); he claimed the Property

exempt as his homestead; the Property has a fair market value of $121,700 (based upon the Town of Coventry 2011 tax appraisal), in which he has an undivided half interest worth $60,850; the balance due on the mortgage against the Property is approximately $35,900; and the Creditor's judicial lien, with a balance due of approximately $100,800, therefore impairs his homestead exemption.

The Creditor filed an opposition to the Motion asserting that the Debtor could not claim a homestead exemption in the Property because it was not his primary residence and because he intended to convey his interest in the Property after completion of his bankruptcy case. Subsequently, the Creditor and Trustee filed an objection to the Debtor's homestead exemption, asserting that he could not claim the Property as exempt because he did not reside there on the petition date, and it was not his intent to retain the Property after completion of his bankruptcy case.

The Court held an evidentiary hearing on the Debtor's motion to avoid lien and the Creditor's objections, at which numerous parties testified. The Debtor and the Creditor then filed memoranda of law and the Court took the matter under advisement.

PERTINENT FACTS

The Debtor and the Creditor filed a joint statement stipulating that the following facts are undisputed and material:

1. The Debtor holds a half interest in the Property, as a tenant in common with his former spouse, Judy Mead Benware. Joint Statement of Undisputed Facts and Contested Issues (doc. # 39) ("JSUF") ¶ 2.

2. The Debtor acquired the Property in two separate transactions. The first piece of land (the "Housesite") consists of approximately 2.02 acres, and was acquired by warranty deed dated April 17, 1995, which was recorded in the Town of Coventry land records. JSUF ¶¶ 3, 4.

3. The Housesite was the site of the Debtor's former marital home, which was destroyed by fire in November 2006. JSUF ¶ 3.

4. The Housesite also contained a trailer, until it was removed in 2009. JSUF ¶ 7.

5. The Housesite is currently improved with utilities and a three-sided lean-to used to shelter beef cattle. JSUF ¶ 7.

6. The Debtor continues to receive his mail at the Housesite address of 4410 Pine Hill Road, Newport, Vermont. JSUF ¶ 20.

7. The second piece of land (the "Camp") abuts the Housesite and consists of approximately 93 acres. The Camp was acquired by warranty deed dated August 10, 2000, which was recorded in the Town of Coventry land records. JSUF ¶ 8.

8. There is no deed combining the Camp and the Housesite into a single parcel. However, the Debtor receives one tax bill for the Property from the Town of Coventry. JSUF ¶ 5.

9. The Debtor filed at least one homestead declaration for the Property with the State of Vermont in 2011. JSUF ¶ 13.

10. The Camp has an approximately 676 square foot building, originally built by Ms. Benware's brothers for use as a hunting camp. JSUF ¶ 9.

11. The Camp does not have running water, but water for the Camp is available from a hose located at the Housesite. Since 2011, the Camp has had electricity provided by wiring laid on the ground and connected to the Housesite. JSUF ¶ 11.

12. Currently, Joe and Jessica Mayhew and their three children reside at the Camp. Joe Mayhew is a friend and co-worker of the Debtor. JSUF ¶¶ 10, 12.

13. From at least the fall of 2011 through May 10, 2012, the Debtor regularly stayed overnight at 1295 Alderbrook Road, in Coventry, Vermont ("Alderbrook"). JSUF ¶ 14.

14. Alderbrook is owned by the Debtor's brother; the Debtor has no recorded interest in Alderbrook. The oil bill for Alderbrook is not in the Debtor's name. JSUF ¶ 16, 17.

15. The Creditor holds a judgment lien encumbering the Property in the amount of $110,031.65 as of the petition date. JSUF ¶ 22.

Based upon the evidentiary hearing testimony, the Court makes the following additional findings of fact:

16. From August 2007 until September 2008, the Debtor lived at the Camp.

17. The Camp has no distinct address from the Housesite.

18. From September 2008 until it was removed in the spring of 2009, the Debtor lived at the Housesite in a trailer previously occupied by Ms. Benware's mother. In April or May 2009, the Debtor moved into his daughter's camper, which was located at the Housesite during that time.

19. In October 2009, the Debtor moved back to the Camp, where he resided until he began staying at Alderbrook.

20. The Debtor began staying at Alderbrook at sometime in 2010 or 2011.

21. Since he began staying at Alderbrook, the Debtor continued to spend a few nights per week at the Camp, until he filed the bankruptcy petition on May 10, 2012.

22. The Debtor has regularly claimed the Property as his homestead for tax purposes.

23. The Property has a value of $121,700. Therefore, the Debtor holds an undivided half interest in the Property valued at $60,850.

24. Though the Camp and Housesite are not entirely contiguous parcels, they share a common boundary of approximately 150-200 feet.

## DISCUSSION

Pursuant to Bankruptcy Rule 4003(c),[1] the Creditor and Trustee have the burden of proof as to their objection to the Debtor's homestead exemption. The Creditor also has the burden of proof with respect to its objection to the Debtor's motion to avoid lien. See, e.g., In re Herd, 176 B.R. 312, 314 (Bankr. D. Conn. 1994) (finding that the creditor's objection to the debtor's § 522(f) motion was identical to its objection to the debtor's claim of homestead exemption, and therefore, the creditor carried the burden of proof on both matters).

The Vermont homestead exemption statute provides that:

> The homestead of a natural person consisting of a dwelling house, outbuildings **and the land used in connection therewith**, not exceeding $125,000.00 in value, and owned and used or kept by such person as a homestead together with the rents, issues, profits, and products thereof, shall be exempt from attachment and execution except as hereinafter provided.

27 V.S.A. § 101 (emphasis added). "[W]here . . . the statute's language is plain, the sole function of the courts is to enforce it according to its terms." In re Ron Pair, 489 U.S. 235, 241 (1989) (citation omitted).

**The Creditor Failed to Establish that the Debtor's Homestead Exemption is Limited to One Parcel**

Under Vermont law, exemption statutes are remedial in nature, and ought to receive a liberal construction in favor of debtors. In re Detko, 290 B.R. 494, 499 (Bankr. D. Vt. 2003). The purpose of Vermont's homestead exemption is "to preserve a home for the family; to protect the family as a unit whether it consists of a husband and wife or any other natural person." In re Evans, 51 B.R. 47, 50 (Bankr. D. Vt. 1985). A homestead "signifies the dwelling house in which the family resides, with the usual and customary appurtenances, including outbuildings that are necessary or convenient for family use, and lands that are devoted to the same purpose." Id.

The pertinent Vermont statute clearly states that a homestead consists of a "dwelling house … and the land used in connection therewith." The statute does not purport to limit the homestead exemption to a single parcel of land. Instead, the exemption focuses solely on the value of the dwelling house and the land used in connection therewith. Further, this Court has held that the debtor's use of the land need be only convenient, rather than essential, for it to qualify as a homestead under this statute. See Evans, 51

---

[1] Bankruptcy Rule 4003(c) provides that "[i]n any hearing under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed. After hearing on notice, the court shall determine the issues presented by the objections." Fed. R. Bankr. P. 4003(c).

B.R. at 50.  In sum, the plain language of the statute and the jurisprudence interpreting the current Vermont homestead exemption, which appear to permit a debtor to claim a homestead in two adjacent parcels of land as long as their total unencumbered value does not exceed the monetary cap set forth in the statute.

This conclusion is further supported by older Vermont Supreme Court cases interpreting prior versions of the Vermont homestead exemption statute.  In Mills v. Estate of Grant, 36 Vt. 269 (1863), the Court held that two contiguous parcels of land could both be claimed as part of the homestead exemption. See id. at 271-72.  At that time, the homestead exemption encompassed "a dwelling-house, outbuildings, and lands appurtenant, occupied as a homestead by a house-keeper"; it did not define a homestead in terms of the "land used in connection therewith." See id. at 270; C.S. 1850, c. 65, § 1.  Nevertheless, the current terminology holds a similar meaning to the prior phrasing "occupied as a homestead by a house-keeper."  In addition, although the homestead exemption no longer refers to "land" in the plural, it also no longer requires that the land be "appurtenant."  The elimination of these two characteristics of the statute appear to balance each other out.  Further, nothing in the current version of the statute indicates a legislative intent to alter the prior interpretations allowing a homestead exemption to encompass two adjacent parcels.

Moreover, the Vermont Supreme Court continued to accept this interpretation of the homestead exemption in a case involving an intervening version of the statute that closely resembles the current form. See Thorp v. Thorp, 70 Vt. 46, 47-48 (Vt. 1897).  In Thorp, the homestead exemption consisted of "a dwelling house, out-buildings, and the land used in connection therewith." Id. at 49; see V.S. § 2179 (1897).  Although in Thorp the Court did not expressly address the question of whether two adjacent parcels, conveyed at different times by different deeds, could both be claimed together as a homestead, it did accept that portions of such parcels could both fall within the homestead definition, as long as their combined value did not exceed the statutory limit.  See Thorp, 70 Vt. at 47-48.  Based upon this guidance from the Vermont Supreme Court, this Court determines that the Debtor may claim both the Camp and the Housesite as exempt under the Vermont homestead statute.

The Creditor cites to 27 V.S.A. § 102 to support its proposition that the Debtor may not claim both the Camp and the Housesite as his homestead.  That statute provides in relevant part as follows:

> When an execution is levied upon real estate of the person of which a homestead is a part or upon that part of a homestead in excess of the limitation of $125,000.00 in value, that person may designate and choose the part thereof, not exceeding the limited value, to which the exemption created in section 101 of this title shall apply.

27 V.S.A. § 102. While this provision does allow for separation of land to limit the homestead exemption,

that carving out of a parcel is limited to situations where the value of the debtor's entire interest in the parcel claimed to be the homestead exceeds the applicable monetary limit. See 27 V.S.A. § 102; Evans, 51 B.R. at 49-50. Indeed, that this provision allows a single parcel of land to be separated for homestead exemption purposes supports the conclusion that whether land is separated into distinct parcels does not control whether it may be considered to fit within the parameters of the Vermont homestead exemption.

The Creditor also relies on Lanier v. Beaman, 394 B.R. 382 (E.D.N.C. 2008) and In re Keena, No. 09–14663, 2011 WL 6293219 (Bankr. W. D. Wis. 2011) as additional support for its argument that the Debtor's homestead exemption is limited to one parcel of land. However, those cases interpret the federal homestead exemption, not Vermont's. See Lanier, 394 B.R. at 383; Keena, 2011 WL 6293219 at *1. The federal provision exempts "[t]he debtor's aggregate interest, not to exceed $22,975 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence." 11 U.S.C. § 522(d)(1). It does not include any language similar to Vermont's homestead statute language, which exempts "land used in connection therewith." Further, in both of these cases, the debtors' use of the adjacent parcels was not as integral to a dwelling house as shown by the facts of the instant case, where the Debtor uses the Housesite to obtain both water and electricity for the Camp. Cf. Lanier, 394 B.R. at 384 (noting that the adjacent parcel, used solely for riding horses, was "not linked to the support, existence, or enhancement of the structure in which the debtors live," and was "entirely separate from the day to day household activities normally expected in a residence"); and Keena, 2011 WL 6293219 at * 3 (holding that using the adjacent parcel for firewood and hunting was "not enough to establish that the lot is necessary to the support, operation and upkeep of the debtors' residence."). Moreover, in those cases, the courts highlighted that the use of the adjacent parcels were not typically necessary to support day to day household activities. See id. In contrast, as previously discussed, the Vermont homestead statute requires only that the use of land be a convenient means of supporting a dwelling house.

In further support of its position for limiting the Debtor's exemption, the Creditor asserts that the Debtor's homestead may not include any land used for commercial purposes. Specifically, the Creditor argues that: (1) the Camp structure does not qualify as a homestead because the Debtor rents it to the Mayhew family; and (2) the Housesite is similarly excluded from the Debtor's allowable exemption because he uses it for the commercial purpose of raising beef cattle. To support this argument, the Creditor relies on True v. Estate of Morrill, 28 Vt. 672 (1856), Thorp v. Wilbur, 71 Vt. 266 (Vt. 1899), and Evans, 51 B.R. 47. However, these cases are distinguishable from the case at bar. In True, the Court merely held that the deceased had not established a homestead because he had never established a dwelling house on the property and instead had used it solely for rental, firewood, or timber purposes. Id.,

6

28 Vt. at 674.  In <u>Wilbur</u>, the Court held that the homestead exemption did not apply to rental property which had previously been the party's homestead because the party had established a new homestead.  <u>Id.</u>, 71 Vt. at 269-70.  Additionally, and not surprisingly, the Court held that the homestead exemption did not extend to those portions of the property covered by a mortgage.  <u>Id.</u> at 270.  Finally, in <u>Evans</u>, the Court held that the homestead exemption did not extend to additional property used solely for rental purposes, where the debtor could already claim the full value of the homestead exemption in the property he used as his actual dwelling house.  <u>See id.</u>, 51 B.R. at 50.  By contrast, where a debtor rents his actual homestead, which he has not abandoned or otherwise forfeited, he would be entitled to exempt the rents generated by that property.  <u>See id.</u>  Thus, even assuming the weekly stipend the Mayhews pay to the Debtor is rent, this fact does not control whether the Debtor may claim any portion of the Property as his homestead.  Further, even if the Debtor's cattle operation is characterized as commercial, this classification does not preclude the Debtor from including the land used for that purpose within the homestead exemption, where the entire value of the Property is less than the applicable monetary amount.  <u>See</u> <u>West River Bank v. Gale</u>, 42 Vt. 27, 32-33 (Vt. 1869) ("[T]he legislature probably did not intend to restrict the use of the homestead to the ordinary domestic purposes of housekeeping, but to give a man a place exempt from attachment, not exceeding $500 in value, with the privilege of occupying and using it as a homestead in such manner as he shall think best calculated to enable him to support his family.").

The Creditor also relies on Vermont subdivision laws to support its conclusion that the Housesite and the Camp may not both be considered part of the Debtor's homestead.  However, subdivision laws are not instructive for interpreting the Vermont homestead statute.  <u>See</u> <u>Evans</u>, 51 B.R. at 51.  In response to one of the Debtor's arguments, the Creditor asserts that the Vermont tax statutes support limiting the Debtor's homestead to, at most, one parcel.  But the Court does not believe interpretation of the homestead exemption by reference to tax provisions is either necessary or appropriate.

Finally, citing the general equities of the case, the Creditor argues that even if the Debtor could claim the Camp structure as his dwelling house, fairness demands that the Court carve out from the Camp a limited homestead consisting of just the 676 square foot structure and the immediate surrounding acreage.  This argument fails because equitable considerations cannot override controlling case law and Vermont law is clear that such a carve out for exemption purposes is appropriate only where the value of the land exceeds the monetary cap set out in the exemption statute. The record is unequivocal that the total value of both of the Debtor's parcels is less than the allowable homestead exemption.  Therefore, the Creditor has failed to sustain its burden of proof with respect to its request that the Court limit the Debtor's homestead exemption to a single parcel of land, or a portion of one parcel.

**The Debtor Established, and has not Abandoned, the Entire Property as his Homestead**

Once a property has become a homestead, it can lose its character only through death, alienation, or abandonment. In re Brent, 68 B.R. 893, 896 (Bankr. D. Vt. 1987). Typically, the homestead is abandoned when the debtor either sells the property or establishes a new homestead. Id. When a homestead is no longer used as a homestead, however, regardless of whether another homestead has been acquired, the homestead has ceased to exist. Id. On the other hand, if a debtor intends to return to the homestead, then the homestead has not been abandoned and remains exempt during the intervening absence. Id. The deciding consideration in determining whether the debtor's absence represents an abandonment of the homestead is whether the debtor has an intention to return. Id. A debtor's intent to maintain or abandon the homestead must be determined in relation to the surrounding exigencies. Id. The law does not favor abandonment of a homestead. Id.

In this case, the Creditor and Trustee do not contest that the Housesite was the Debtor's homestead before the house burned. Nor do they specifically contest that at least some portion of the Property remained the Debtor's homestead for a time following the fire. Instead, they assert that the Debtor relinquished his right to claim the Property as his homestead by February 12, 2009. See JSUF p. 4. Even if the Trustee and Creditor had not conceded that a portion of the Property remained the Debtor's homestead until February 12, 2009, based upon the testimony presented at the hearing, the Court finds that the following facts support such a conclusion: (1) the Debtor resided full time, in various structures on the Property, from August 2007 through at least 2010; (2) the Property is the only real property the Debtor owns; (3) the Debtor pays property tax on the Property; and (4) the Debtor declared the Property as his homestead for tax purposes. Further, the Court finds that the Debtor most recently established the Camp structure as his dwelling house. Thus, he may permissibly claim both parcels as his homestead, unless the Creditor and Trustee prove he did not use the adjacent Housesite in connection with his dwelling house. The Debtor and his son credibly testified that the Debtor uses the Housesite to raise beef cattle and to obtain both water and electricity for the Camp. The Creditor and Trustee have not proven, or even alleged, that such uses are not convenient to the Debtor's use of the Camp's dwelling house. Accordingly, the Debtor established a homestead that encompasses the entire Property.

Thus, the focus shifts to whether the Debtor has abandoned the Property as his homestead. Since the Debtor has not sold the Property, he has only abandoned the Property as his homestead if he either established a new homestead, or no longer uses the Property as his homestead and has no intent to return to the Property. In order to prevail on the abandonment argument, the Creditor and Trustee must demonstrate one of these scenarios, and they have failed to do so.

First, although the Debtor has been staying at Alderbrook, it is uncontested that he holds no legal title to that property. Further, the Creditor does not suggest that the Debtor has any equitable ownership in that property. Thus, the Debtor cannot have established a new homestead at Alderbrook. See In re Avery, 41 B.R. 224, 226 (Bankr. D. Vt. 1984) (noting that, under Vermont law, a person claiming a homestead exemption must have some type of ownership in that property).

Second, the Creditor has not established that the Debtor no longer uses the Property as his homestead or has no intent to return to the Property. Although the Debtor was only staying at the Property a few nights per week at the time he filed his bankruptcy petition, this fact is insufficient to prove that he was not using the Property as his homestead, given the surrounding exigencies of this case. The evidentiary hearing testimony demonstrated that the Debtor was allowing the Mayhews to reside with him at the Property, he still considered the Property his home, and he was staying at Alderbrook on an intermittent basis, at his brother's request, to protect that property from thefts. Further, the Debtor continued to keep beef cattle at the Housesite, and also received his mail there. The Creditor and Trustee failed to establish facts sufficient to show the Debtor ceased using this Property as his homestead.

Even assuming *arguendo* the Debtor's use of the Property at the time he filed his bankruptcy petition was not sufficient to for it to qualify as his homestead, the Creditor and Trustee have not met their burden of proving that he did not intend to return to the Property. First, although the Debtor admits that he plans to convey both parcels to other parties in the future, he also alleges that he intends to renovate the Camp structure, and keep a life estate in the Camp. The Creditor alleges that this assertion should be discredited, as the Debtor has little funds with which to renovate the Camp structure. However, the Debtor has credibly testified that he previously occupied the Camp structure as his dwelling house in its current condition, and therefore, even if the Debtor cannot afford to renovate the structure, there is no basis for the Court to conclude that this would preclude him from occupying it as his dwelling house in the future. Additionally, the Creditor and Trustee have not established that the Debtor has no intent to maintain his current use of the Housesite as a source for water and electricity for the dwelling structure on the Camp.

More importantly, the Creditor and Trustee did not allege that the Debtor had the intent to convey the property to other parties at the relevant time – the time of filing his petition. See In re Bernstein, 62 B.R. 545, 550 (Bankr. D. Vt. 1986) (noting that homestead rights are determined as of the date of the filing of the petition for relief). If the Debtor only formed this intent to convey the Property after he filed his petition, it has no bearing on whether he has abandoned the Property for purposes of claiming an exemption in the Property. For all of the above reasons, the Court determines that the Creditor and

9

Trustee have not met their burden of proving that the Debtor failed to establish or maintain the Property as his homestead.

**Equitable Considerations Cannot Override the Clear Meaning of the Statute and Applicable Law**

As a last resort, the Creditor argues generally that the equities of the case warrant a decision in its favor. This Court acknowledges that the Property is a large tract of land, and allowing the Debtor to claim the entire Property as exempt may appear to be unfair to the Creditor, who provided significant and expert assistance to the Debtor, whose legal services resulted in great benefit to the Debtor, who did nothing to justify it being deprived payment and who acted in reliance upon the Debtor's promise to pay. If considering only the equities of the case, this Court might determine that the Debtor's homestead exemption should be limited to just one parcel so that the Creditor could be paid at least some of what the Debtor owes it. However, the Court cannot be swayed by the facts of a particular case when adjudicating a legal issue; it must apply the pertinent statutes and controlling case law.

As courts of equity, bankruptcy courts do have the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." See 11 U.S.C. § 105(a). But, that grant of equitable power does not "authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity." In re Dairy Mart Convenience Stores, Inc., 351 F.3d 86, 92 (2d Cir. 2003). Instead, it only allows them to "exercise equity in carrying out the *provisions* of the Bankruptcy Code, rather than to further the purposes of the Code generally, or otherwise to do the right thing." Id. (emphasis in original). Because applicable law permits the Debtor to exempt the entire Property as his homestead, the Court will not enter an order reaching a contrary conclusion.

**The Objection to Homestead Exemption Filed by the Creditor and Trustee is Overruled**

Since the pertinent statute and case law permit the Debtor to claim a homestead exemption in both the Camp and the Housesite, and the Creditor and Trustee have failed to meet their burden of proving that the Debtor did not establish and maintain both parcels as his homestead, the Debtor's claim of the Property as his homestead is not improper, and the Creditor's and the Trustee's objection to the Debtor's claimed exemption is overruled.

**The Debtor May Avoid the Creditor's Lien in its Entirety**

The Creditor correctly concedes that its lien is of the type that the Debtor may avoid the fixing of on his property, to the extent that it impairs his homestead exemption. See 11 U.S.C. § 522(f)(1)(A). Section 522(f)(2)(A) of the Bankruptcy Code provides:

> For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—

10

 (i) the lien;
 (ii) all other liens on the property; and
 (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
exceeds the value that the debtor's interest in the property would have in the absence of any liens.

11 U.S.C. § 522(f)(2)(A).

 Following the dictates of § 522, the Court determines the extent to which the Creditor's lien is avoidable by first adding its amount, $110,031.65, to $60,850, the amount of the exemption that the Debtor could claim if there were no liens on the property.[2] The Court then subtracts the value that the Debtor's interest in the property would have in the absence of any liens, also $60,850, resulting in an amount of $110,031.65. Because this amount equals the amount of the Creditor's lien, the lien is avoidable in its entirety.

CONCLUSION

 For the reasons set forth above, the Court finds that the Creditor and Trustee have not met their burden of proof on the issues raised in the objections, the Debtor is entitled to claim the Property as his homestead, the fair market value of the Property is $121,700 and the Debtor holds an undivided half interest of $60,850, and the Debtor has established cause to avoid the Creditor's judicial lien under § 522(f). Therefore, the Debtor's motion to avoid lien is granted. The Creditor's objection to the motion to avoid lien, and the Creditor's and Trustee's objection to the Debtor's claim of homestead exemption, are overruled.

 This memorandum constitutes the Court's findings of fact and conclusions of law.

_____
March 29, 2013                  Colleen A. Brown
Burlington, Vermont             United States Bankruptcy Judge

---

[2] Based on this Court's ruling in a related adversary proceeding (AP # 12-1019), and as indicated by the Debtor's motion to avoid lien, the property is also encumbered by a mortgage, the amount of which is yet to be determined. However, the amount of the mortgage is irrelevant to the instant proceedings because the total value of the Debtor's interest in the Property is less than the cap on the homestead exemption. Therefore, the amount of the mortgage is not factored into the instant calculations.